1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12

JOSE INES MEDINA PONCE,

13

Plaintiff,

14

v.

15

UNITED STATES OF AMERICA,

16

Defendant.

17

Case No. 13-CR-00347-LHK-1
Case No. 16-CV-05232-LHK

**ORDER DENYING PETITIONER'S
MOTION TO SET ASIDE, CORRECT,
OR VACATE SENTENCE PURSUANT
TO 28 U.S.C. § 2255**

Re: Dkt. No. 74 (13-CR-00347-LHK-1)[1]
Re: Dkt. No. 1 (16-CV-05232-LHK)

18

On September 12, 2016, Petitioner Jose Ines Medina Ponce ("Petitioner"), proceeding *pro*

19

*se*, filed a motion pursuant to 28 U.S.C. § 2255 challenging his sentence on the grounds that he

20

received ineffective assistance of counsel. *See* ECF No. 74 ("Mot.").

21

Having considered Petitioner's motion, the government's opposition, the record in this

22

case, and the relevant law, the Court DENIIES Petitioner's motion to vacate, set aside, or correct

23

his sentence pursuant to 28 U.S.C. § 2255.

24
25
26

---

[1] All docket entries in this Order are to Case No. 13-CR-00347-LHK-1 unless otherwise noted.

27

28

# I.    BACKGROUND

## A. The Indictment and Petitioner's Plea Agreement

On May 30, 2013, Petitioner was indicted in the Northern District of California by a federal grand jury. *See* ECF No. 1. Petitioner was indicted for one count of possession with intent to distribute and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). *See id.* at 2–5. That charge carried a mandatory minimum sentence of 10 years' imprisonment.

On December 14, 2014, a superseding information was filed. ECF No. 24. That superseding information charged Petitioner with the same offense, but without the mandatory minimum, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.*

On December 17, 2014, with the assistance of counsel, Petitioner pleaded guilty to one count of possession with intent to distribute and distribution of methamphetamine pursuant to the superseding information, and therefore Petitioner avoided the mandatory minimum sentence of 10 years' imprisonment. ECF No. 27 ("Plea Agreement"). Petitioner executed a written Plea Agreement pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B). *Id.* Rule 11(c)(1)(A) provides that where a defendant pleads guilty to a charged offense or a lesser or related offense, the Plea Agreement may specify that the government will "not bring, or will move to dismiss, other charges" against the defendant. Further, Rule 11(c)(1)(B) provides that the government will "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court)."

Petitioner's Plea Agreement provided, in relevant part:

### The Defendant's Promises

1.  I agree to plead guilty to Count One of the Superseding Information charging me with a violation of 21 U.S.C. §§ 841(a)(1), Possession with Intent to Distribute and Distribution of Methamphetamine. I agree that the elements of

2

the offense are as follows:

    a. I knowingly possessed a controlled substance, specifically methamphetamine and;

    b. I possessed it with the intent to distribute, and did in fact distribute it to another person.

I agree that the maximum penalties are as follows:

| | | |
|---|---|---|
| a. | Maximum prison term: | 20 years |
| b. | Maximum fine: | $1,000,000 |
| c. | Maximum supervised release term: | Life |
| d. | Minimum supervised release term: | 3 years |
| e. | Restitution: | As determined by the Court |
| f. | Mandatory special assessment: | $100 |
| g. | Potential Deportation | |
| h. | Mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. § 862 and § 862a. | |

I acknowledge that pleading guilty may have consequences with respect to my immigration status if I am not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which I am pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and I understand that no one, including my attorney or the district court, can predict to a certainty the effect of this conviction on my immigration status. I nevertheless affirm that I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States.

2. I agree that I am guilty of the offense that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true:

    a. On February 15, 2012, in San Jose, in the Northern District of California, I sold a quarter pound of methamphetamine for $3,000 to a person who was, unknown to me at the time, working undercover for law enforcement.

b. I agree that the amount of actual methamphetamine I distributed was 110.2 grams.

3. I agree to give up all rights that I would have if I chose to proceed to trial, including the rights to a jury trial with the assistance of any attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government; and to pursue any affirmative defenses and present evidence.

4. I agree to give up my right to appeal my conviction, the judgment, and orders of the Court. I also agree to waive any right I have to appeal any aspect of my sentence, including my orders relating to forfeiture and or restitution.

5. I agree not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea. I also agree not to seek relief under 18 U.S.C. § 3582.

6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. I understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent proceeding, including at trial, in the event I violate any of the terms of this Agreement, and (b) I expressly waive any and all rights under Fed. R. Crim. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Paragraph 2 of this Agreement in such subsequent proceeding. I understand that the government will not preserve any physical evidence obtained in this case.

7. I agree that the Court will use the Sentencing Guidelines to calculate my sentence. I understand that the Court must consult the Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound by the Guidelines calculations below, the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask to withdraw my guilty plea. I agree that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea. I also agree that the Sentencing Guidelines offense level will be calculated as follows and that I will not ask for any other adjustment to or reduction in the offense level or for a downward departure from the Guidelines range as determined by the Court. The parties have reached no agreement regarding my Criminal History Category.

4

1  

2  

a. Base Offense Level:                                                        30
   (U.S.S.G. § 2D1.1(c)(4);[2] at least 50 grams but less than
   150 grams of actual methamphetamine)

3  

4  

b. Safety valve:                                                             -2
   (If I meet the requirements set forth in subdivisions (1)-(5)
   of subsection (a) of § 5C1.2, I may receive a reduction as provided
   in U.S.S.G. § 2D1.1(b)(16))[3]

5  

6  

c. Acceptance of Responsibility:                                            -3
   . . .

7  

8  

d. Adjusted Offense Level:                                                   25

. . .

9  

10  9.  I agree to pay restitution for all the losses caused by all the schemes or offenses
     with which I was charged in this case, and I agree that the amount of restitution
     will not be limited to the loss attributable to the count to which I am pleading
     guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree that the Court may order and
     I will pay restitution. . . .

11  

12  

13  10. . . . I agree to remain in the custody of the United States Marshal following my
     guilty plea pursuant to 18 U.S.C. § 3143(a)(2).

14  

15  11. I agree that this Agreement contains all of the promises and agreements
     between the government and me, and I will not claim otherwise in the future.
     No modification of this Agreement shall be effective unless it is in writing and
     signed by all parties.

16  

17  

18  

19  

20  

21  [2] At the Sentencing Hearing, the Court determined this reference to U.S.S.G. § 2D1.1(c)(4) was a
typo as that provision should have been U.S.S.G. § 2D1.1(c)(5). *See* ECF No. 54 at 17–18. The
descriptions accompanying the typo, however, were correct, and the typo did not affect the offense
levels, which were also correct. *See id.* The Court asked defense counsel to advise Petitioner of
these typos, and the Court confirmed with Petitioner that he would still like to proceed. *Id.* at 18–
19.

22  

23  

24  [3] At the Sentencing Hearing, the Court determined this reference to U.S.S.G. § 2D1.1(b)(16) was a
typo as the provision relating to the safety valve should have been U.S.S.G. § 2D1.1(b)(17). *See*
ECF No. 54 at 18. The descriptions accompanying the typo, however, were correct, and the typo
did not affect the offense levels, which were also correct. *See id.* The Court asked defense counsel
to advise Petitioner of these typos, and the Court confirmed with Petitioner that he would still like
to proceed. *Id.* at 18–19.

25  

26  

27  

28  Case No. 13-CR-00347-LHK-1
Case No. 16-CV-05232-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

. . .

<u>*The Defendant's Affirmations*</u>

16. I confirm that I have had adequate time to discuss the case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

17. I confirm that the [sic] while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

18. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

19. I confirm that I read this entire plea agreement with the assistance of a Spanish language interpreter and in the presence of my attorney.

Plea Agreement ¶¶ 1–19.

Petitioner's Plea Agreement contained a section where his attorney certified that she had "fully explained to [her] client all the rights that a criminal defendant has and all terms of this Agreement." *Id.* ¶ 20. She certified that in her opinion, her "client understands all the terms of the Agreement and all the rights [her] client is giving up by pleading guilty, and based on the information now known to [her], [her] client's decision to plead guilty is knowing and voluntary. *Id.* The Plea Agreement also contained an "interpreter certification" section in which the interpreter certified they were "a certified Spanish language interpreter" and that they "accurately translated this Agreement to the defendant." *Id.* at 7.

**B. Petitioner's Plea of Guilty**

On December 17, 2014, pursuant to the Plea Agreement, Petitioner pleaded guilty to the superseding information before the Court to one count of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841. *See* ECF No. 52 ("Plea Transcript"). A Spanish

interpreter was present to assist Petitioner during the hearing. *See id.* at 1. Petitioner was sworn in, and confirmed that he reviewed the superseding information, discussed the superseding information with his attorney, and that it was his signature on the waiver of indictment form. *Id.* at 2–3. Petitioner affirmed that the Plea Agreement had been translated into Spanish for him and that he understood the Plea Agreement. *Id.* at 4. The Court and Petitioner further engaged in the following discussion:

> THE COURT: Have you had enough time to discuss whether you should go trial or not, whether you should plead guilty, and this plea agreement with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has your attorney been able to answer your questions about this plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied with the services your attorney has provided to you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Other than the promises that are contained in this plea agreement, has anyone else promised you anything in order to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone made any threats against you in order to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Is your decision to plead guilty free and voluntary?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you taken any drugs or medication that affects your ability to think clearly, understand what is happening, and make decisions?
>
> THE DEFENDANT: No.

7

*Id.* at 4–5.

At the hearing, Petitioner acknowledged that he understood what the government would have to prove beyond a reasonable doubt at trial: "that the defendant knowingly possessed a controlled substance, in this case methamphetamine; and that the defendant possessed it with the intent to distribute it." *Id.* at 5. Petitioner also acknowledged that he understood the maximum penalties under the law:

> MS ROSEN: The maximum penalties provided by law are 20 years imprisonment; a $1 million fine; a supervised release term with a minimum of three years and a maximum of life; restitution which would be determined by the Court; a mandatory special assessment of $100; and, of course, potential deportation and mandatory and discretionary denial of federal benefits.
>
> THE COURT: In addition to deportation, there may be other immigration consequences as well if you are not a U.S. Citizen.
> Also, under state law, you may be required to register as a drug offender.
> Do you understand all the maximum penalties provided by law?
>
> THE DEFENDANT: Yes.

*Id.* at 6.

Petitioner also acknowledged that he had the right to be represented by an attorney and that the Court would appoint an attorney if he could not afford one, and that he understood he was giving up his rights to plead not guilty, to have a jury trial, to present defenses at that trial, to file an appeal, and to collaterally attack the conviction and sentence:

> THE COURT: Do you understand that you have the right to file other types of motions or petitions attacking orders made by the Court, including your sentence, attacking your conviction?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that in paragraph 5 of your plea agreement, you're giving up that right, except you are keeping the right to claim that your lawyer was not effective in negotiating your plea agreement or in advising you regarding your entry of a guilty plea?
>
> THE DEFENDANT: Yes.

8

*Id.* at 8–9.

Petitioner pleaded guilty before the Court to one count of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841. *Id.* at 9–10. The Court asked defense counsel if she concurred in Petitioner's waiver of rights and entry of a guilty plea, to which defense counsel replied, "I do, your honor." *Id.* at 10. The Court accepted the plea and found that Petition "made a knowing, intelligent, free and voluntary waiver of rights and entry of a guilty plea." *Id.* at 10.

**C. Petitioner's Sentencing**

Prior to sentencing, Petitioner filed his sentencing memorandum and exhibits. ECF No. 30. Although Petitioner's Plea Agreement did not allow him to "ask for any other adjustment to or reduction in the offense level or for a downward departure from the Guidelines range," the Plea Agreement still allowed defense counsel to argue for a downward variance. *See* Plea Agreement ¶ 7. Relevant here, Petitioner's counsel did argue that his minor role supported a downward variance. *See id.* at 2. Although Petitioner did not seek a downward departure based on his minor role in the offense, his sentencing memorandum referred to the guidelines provision for such a departure as a starting point for his argument. *Id.* at 8–9 (citing 18 U.S.C. § 3553(a)). Petitioner argued that a downward variance was warranted based on his minor role because he was a "willing courier;" he "did not act alone;" "he was given the methamphetamine and instructed by Comcast to deliver it to the confidential informant, collect payment, and pretend to be the source;" and he "delivered one package of methamphetamine on one occasion." *Id.* at 8–10. Moreover, Petitioner argued that "[a]fter the offense, [Petitioner] continued to struggle for work and money to support his family. This does not demonstrate any sophistication or more serious involvement in this offense or any claim of drug dealing." *Id.* at 10. Finally, Petitioner argued that his "actions at the time of his arrest do not suggest that he is a sophisticated methamphetamine seller – he used his true name, drove his own car and confessed at his initial questioning." *Id.* Any boastful statements to the confidential information, Petitioner maintained "were clearly puffery, not credible, remain

United States District Court
Northern District of California

uncorroborated, and were plainly incredible." *Id.*

The Court sentenced Petitioner on April 29, 2015. ECF No. 37; *See* ECF No. 54 ("Sentencing Transcript"). At sentencing, the Court heard from defense counsel, who, among other things, argued that a downward variance was warranted based on Petitioner's minor role. Defense counsel stated: "I think it's important to note after he participated in this sole transaction, he never engaged in any further transactions with the confidential informant despite all the puffery and talk." *Id.* at 15. The Petitioner did not wish to speak. *Id.* at 21.

The Court determined that the base offense level was 30, but that the Petitioner qualified for a two level safety valve reduction and a three level reduction because Petitioner had accepted responsibility. *Id.* at 21–22. Thus, the final offense level was 25. Petitioner had no prior criminal history, so he was a criminal history category 1 with 0 criminal history points. *Id.* at 22. This placed Petitioner in the 57-to-71 month sentencing guideline range. *Id.* The Court then analyzed the 18 U.S.C. § 3553(a) factors. *Id.* Relevant here, the Court considered the following facts about Petitioner's role. The drug deal was organized by Comcast and the confidential informant, and only one transaction occurred. *Id.* Petitioner used his true name with the confidential informant, drove his own car to the transaction, confessed immediately during the initial questioning, and did not appear to be a sophisticated drug dealer. *Id.* Petitioner had no criminal history or gang ties. *Id.* at 23. After considering the 18 U.S.C. § 3553(a) factors, the Court varied downward and sentenced Petitioner to 50 months of imprisonment, three years of supervised release, and a $100 special assessment. *Id.* at 24–27. The Court asked whether there was any legal reason why this sentence should not be imposed on Petitioner. *Id.* at 27. Both defense counsel and the government answered in the negative. *Id.* As a result, the Court imposed the sentence on Petitioner. *Id.*

**D. Petitioner's Appeal and Motion to Vacate, Set Aside, or Correct Sentence**

On July 28, 2015, Petitioner filed a Notice of Appeal. ECF No. 58. On November 20, 2015, Petitioner filed an Anders brief appealing his conviction and sentence. *See* ECF No. 76 Exh. 2. Because Petitioner had waived his right to appeal, the Ninth Circuit dismissed the appeal

10

1    on May 31, 2016. ECF No. 71. The mandate issued on June 23, 2016. ECF No. 72.

2         On September 12, 2016, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct

3    Sentence pursuant to 28 U.S.C. § 2255. *See* Mot. On September 15, 2016, the Court issued an

4    order directing the government to respond within 90 days of the issuance of the order "[i]f

5    Petitioner does not file a supporting memorandum of points and authorities." ECF No. 2 (16-CV-

6    05232). Petitioner did not file a supporting memorandum of points and authorities, and the

7    government did not timely file an answer. *See* ECF No. 75. On August 31, 2017, the Court again

8    ordered the government to file an answer to Petitioner's § 2255 motion. *Id.* The government filed

9    its opposition on September 18, 2017. ECF No. 76 ("Opp'n"). Petitioner did not reply.

10   **II.    LEGAL STANDARD**

11        A 28 U.S.C. § 2255 motion to set aside, correct or vacate a sentence of a person in federal

12   custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or

13   infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

14   collateral attack." 28 U.S.C. § 2255(b). Under § 2255, "a district court must grant a hearing to

15   determine the validity of a petition brought under that section, [u]nless the motions and the files

16   and records of the case conclusively show that the prisoner is entitled to no relief." *United States*

17   *v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (internal quotation marks

18   omitted). A Court need not hold an evidentiary hearing where the prisoner's allegations, when

19   viewed against the record, either do not state a claim for relief or are so palpably incredible as to

20   warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996);

21   *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing

22   is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief;

23   and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is

24   entitled to no relief. *See Howard*, 381 F.3d at 877.

25   **III.   DISCUSSION**

26        In his § 2255 motion, Petitioner effectively makes three claims: (1) his lawyer was

27                                                        11

ineffective for not explaining the Plea Agreement to him; (2) his lawyer was ineffective for not seeking a minor role reduction in his Plea Agreement; and (3) he did not receive Miranda warnings at the time of his arrest. Mot. at 4.[4] For the reasons stated below, the Court finds that Petitioner has not demonstrated that he is entitled to any relief under § 2255 based on his ineffective assistance of counsel claims or failure to receive Miranda warnings at the time of his arrest.

**A. Ineffective Assistance of Counsel Claims**

A petitioner's claim of ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, a petitioner must show: (1) that counsel's representation fell below the range of competence demanded of attorneys in criminal cases; and (2) that the petitioner was prejudiced by counsel's representation. The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to demonstrate prejudice, the petitioner must "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* test also applies to ineffective assistance of counsel claims "arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In a challenge to a guilty plea based on ineffective assistance of counsel, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's alleged errors and coercion, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58–59.

In his § 2255 motion, Petitioner effectively makes two ineffective assistance of counsel claims: (1) his lawyer was ineffective for not explaining the Plea Agreement to him; (2) his lawyer

---

[4] Petitioner also states that his counsel told him not to meet with his probation officer. *See Mot.* at 4. This issue, however, is not a constitutional or jurisdictional violation, and therefore it is not properly before the Court in this collateral attack. The Court will not consider it any further. *See United States v. Timmreck*, 441 U.S. 780, 783–84 (1979) (holding that collateral review is not available for technical violations).

was ineffective for not seeking a minor role reduction in his Plea Agreement. The Court finds that Petitioner has failed to satisfy the *Strickland* test as to both of these claims. The Court considers the claim that defense counsel was ineffective for failing to explain the Plea Agreement first, and the claim that defense counsel was ineffective for failing to seeking a minor role reduction second.

**1. Petitioner's Lawyer was not Ineffective for Failing to Explain the Plea Agreement**

The Court finds that Petitioner has failed to satisfy either prong of the *Strickland* test as to his allegation that his lawyer was ineffective for not explaining the Plea Agreement. First, as to *Strickland*'s performance prong, the Court finds that Petitioner failed to show that his former counsel's performance fell below an objective standard of reasonableness because Petitioner's allegation is contradicted by the Plea Agreement that Petitioner signed and the sworn statements that Petitioner made at his plea hearing. Specifically, Petitioner expressly affirmed in his Plea Agreement that (1) Petitioner "had adequate time to discuss the case, the evidence, and the Agreement" with his former counsel; (2) Petitioner's former counsel "provided [Petitioner] with all the legal advice that [he] requested; and (3) Petitioner's "decision to enter a guilty plea is made knowing the charges that have been brought against [him], any possible defense, and the benefits and possible detriments of proceeding to trial." Plea Agreement ¶¶ 16, 18. Additionally, Petitioner's former counsel certified that she had "fully explained to [her] client all the rights that a criminal defendant has and all terms of this Agreement," and that, in her opinion, her "client understands all the terms of the Agreement and all the rights [her] client is giving up by pleading guilty, and based on the information now known to [her], [her] client's decision to plead guilty is knowing and voluntary." *Id.*¶ 20. The Plea Agreement also contained an "interpreter certification" section in which the interpreter certified they were "a certified Spanish language interpreter" and that they "accurately translated this Agreement to the defendant." *Id.* at 7.

During the plea hearing, Petitioner expressly affirmed that he (1) understood the agreement; (2) had enough time to discuss "whether [he] should go to trial or not, whether [he] should plead guilty, and th[e] Plea Agreement with [his] attorney"; (3) that his attorney was able

13

to answer his questions about the Plea Agreement; (4) that he is satisfied with the services his attorney had provided him; and (5) that he has not taken any drug or medication that affects his ability to "think clearly, understand what is happening, and make decisions." Plea Transcript at 4–5. After the maximum penalties were recited, the Court asked and Petitioner confirmed that (1) he understood the maximum penalties provided by law; and (2) that he understand and was giving up all of his constitutional rights, including that he had the right to counsel, the right to a trial, the right to present a defense, and the right to not testify. *Id.* at 6–9. Petitioner's counsel concurred in Petitioner's waiver of rights and entry of a guilty plea. *Id.* at 10. The Court then accepted the plea and found that Petitioner "made a knowing, intelligent, free and voluntary waiver of rights and entry of a guilty plea." *Id.* at 10.

While not insurmountable, the plea record in the instant case constitutes a formidable barrier to Petitioner's collateral attack on his guilty plea, and overcoming that barrier requires more than conclusionary allegations. *See Blackledge v. Allison*, 431 U.S. 63 (1997). This is because the statements that Petitioner made under oath and in open court are accorded significant weight. "[S]olemn declarations in open court carry a strong presumption of verity." *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (quoting *Blackledge*, 431 U.S. at 74).

Moreover, Petitioner provides no further statements in support of his claim, so Petitioner has made no allegations to overcome the strong presumption of verity that attaches to the statements that Petitioner made under oath and in open court described above. As a result, Petitioner's claim regarding his former counsel's purportedly deficient performance is not credible in light of the evidence in the record indicating that (1) Petitioner was satisfied with his former counsel's representation; (2) Petitioner was not pressured by his former counsel to plead guilty; and (3) Petitioner understood the rights that he was giving up by pleading guilty.

Moreover, in dismissing Petitioner's appeal, the Ninth Circuit held that Petitioner had "waived his right to appeal his conviction and sentence," and that "[o]ur independent review of the record pursuant to *Penson v. Ohio*, 488 U.S. 75, 80 1988), discloses no arguable issue as to the

14

validity of the waiver." Opp'n Exh. 3 at 2 (citing *United States v. Watson*, 582 F.3d 974, 986–88 (9th Cir. 2009)); *see also Watson*, 582 F.3d at 986 ("A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." (citation omitted)). As a result, the Ninth Circuit has already rejected Petitioner's claim that his plea was not knowing and voluntary, and that finding is binding on this Court. *See United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as [a] basis for a subsequent § 2255 petition."). Accordingly, the Court concludes that Petitioner has not demonstrated that his former counsel's performance fell below an objective standard of reasonableness as to this claim.

Second, Petitioner has also failed to make a sufficient showing under *Strickland*'s prejudice prong. As discussed above, in order for a petitioner to demonstrate that he was prejudiced by ineffective assistance of counsel during his plea process, the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors and coercion, the petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. In the instant case, Petitioner has neither alleged nor explained why he would have insisted on going to trial absent his former counsel's purportedly deficient performance.

In sum, the Court finds that Petitioner is not entitled to relief based on his ineffective assistance of counsel claim for failure to explain the Plea Agreement because he has failed to satisfy either prong of the *Strickland* test.

### 2. Petitioner's Lawyer was not Ineffective for Failing to Obtain a Minor Role Reduction

Petitioner has also failed to satisfy the *Strickland* test as to his allegation that his lawyer was ineffective for failing to obtain a minor role reduction under U.S.S.G. §§ 2D1.1(B)(16) and 3B1.2. Petitioner's claim as to his minor role appears to take two forms: (1) "my defense counsel never support [sic] the fact that I had a minor role and participation in the offense"; and (2) "my

United States District Court
Northern District of California

defense lawyer never mentioned that I was able to obtain any benefit to be a minor role participant." Mot. at 4. The Plea Agreement specifically provided that: "I also agree that the Sentencing Guidelines offense level will be calculated as follows and that I will not ask for any other adjustment to or reduction in the offense level or for a downward departure from the Guidelines range as determined by the Court." *See* Plea Agreement ¶ 7. However the Plea Agreement did allow Petitioner to seek downward variances from his guideline range. *See id.*

Turning first to *Strickland*'s performance prong, Petitioner's contention that "my defense counsel never support [sic] the fact that I had a minor role and participation in the offense," Mot. at 4, is wrong in light of the record. Petitioner's defense counsel argued in both the sentencing memorandum and at the Sentencing Hearing that Petitioner's sentence should be lower than the guidelines range based on, among other things, Petitioner's minor role in the offense. *See* ECF No. 30; Sentencing Transcript at 15. Defense counsel's argument included, among other things, that a downward variance was warranted based on Petitioner's minor role because he was a "willing courier;" he "did not act alone;" "he was given the methamphetamine and instructed by Comcast to deliver it to the confidential informant, collect payment, and pretend to be the source;" and he "delivered one package of methamphetamine on one occasion." ECF No. 30 at 8–10. Defense counsel stated at the Sentencing Hearing that, "I think it's important to note after [Petitioner] participated in this sole transaction, he never engaged in any further transactions with the confidential informant despite all the puffery and talk." Sentencing Transcript at 15. Therefore, Petitioner's claim that defense counsel was ineffective for failing to argue that Petitioner had a minor role in the offense is meritless.

Petitioner also fails to demonstrate that his former counsel's performance fell below an objective standard of reasonableness. As the government points out, this argument "seems to assume that [Petitioner] would have received" the minor role reduction in his Plea Agreement "if only his counsel had asked the government for it in negotiating his plea." Opp'n at 7. But Petitioner's argument is mistaken because the United States would not have been required to

16

Case No. 13-CR-00347-LHK-1
Case No. 16-CV-05232-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

accept that term. As the United States Supreme Court has stated that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

Further, Petitioner received significant benefits from the Plea Agreement far beyond a minor role reduction. Specifically, Petitioner's counsel negotiated a Plea Agreement to a superseding information that eliminated the statutory mandatory minimum sentence of 10 years, which enabled the Court to sentence Petitioner to 4 years and 2 months. Petitioner fails to appreciate that he was originally indicted for one count of possession with intent to distribute and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). ECF No. 1 at 2–5. That charge carried a mandatory minimum sentence of 10 years' imprisonment. However, on December 14, 2014, a superseding information was filed that charged Petitioner with the same offense, but without the mandatory minimum. ECF No. 4. With the assistance of counsel, Petitioner pleaded guilty to that superseding information and therefore avoided the mandatory minimum sentence of 10 years' imprisonment. *See* Plea Agreement. Thus, Petitioner's counsel's negotiation of the superseding information and Plea Agreement conferred significant benefits on Petitioner.

Furthermore, as already discussed, Petitioner affirmed in his Plea Agreement and at the Plea Hearing that his decision to plead guilty was knowing and voluntary. Thus, Petitioner was bound by the terms of his Plea Agreement that provided that he would not seek a reduction or a downward departure in the offense level. Plea Agreement ¶ 7. Moreover, although the Plea Agreement did not allow Petitioner to seek a reduction in the offense level or a downward departure, it still allowed Petitioner to seek a downward variance. *See id.* As discussed above, Petitioner's defense counsel took advantage of that, and the Court considered Petitioner's role at the time of sentencing. Petitioner's counsel's actions were not the actions of ineffective counsel.

As to the second *Strickland* factor, prejudice, even if Petitioner's counsel had negotiated a Plea Agreement that allowed Petitioner to seek a minor role adjustment or downward departure,

United States District Court
Northern District of California

1   Petitioner has not shown that such efforts would have made a difference. Petitioner has made no

2   argument that Petitioner could have secured a reduction of his sentence. For instance, the

3   Probation Office did not recommend a minor role adjustment or downward departure, despite

4   having the opportunity to make an independent recommendation as to the correct guidelines

5   calculation. *See* Sentencing Transcript at 9–10, 18. Additionally, as discussed, defense counsel *did*

6   seek a downward variance for, among other things, Petitioner's minor role. The Court considered

7   that factor, along with other factors, and granted a downward variance. *Id.* at 21-25.

8   Finally, Petitioner has not made any allegations to suggest that he would not have pleaded

9   guilty and would have insisted on going to trial with a possible 10 year statutory mandatory

10  minimum sentence had he been aware of the minor role adjustment or downward departure during

11  the plea bargain process. *See Hill*, 474 U.S. at 58–59("[I]n order to satisfy the 'prejudice'

12  requirement, the defendant must show that there is a reasonable probability that, but for counsel's

13  errors, he would not have pleaded guilty and would have insisted on going to trial.").

14  Finally, the Court notes that although Petitioner did not file a supporting memorandum of

15  points and authorities for his § 2255 Petition, *see* ECF No. 75, the Court is aware from the exhibits

16  and record that Petitioner did raise this argument and several cases in support of it in his Anders

17  brief on appeal. *See* Opp'n Exh. 2. In his Anders brief, Petitioner cited *United States v. Harfst*, 168

18  F.3d 398 (10th Cir 1999); *United States v. Soto*, 132 F.3d 56 (D.C. Cir. 1997); and *United States v.*

19  *Headley*, 923 F.2d 1079 (3rd Cir. 1991). In those cases, the court found that the petitioner may

20  have a valid claim that petitioner's counsel was ineffective for failing to argue that petitioner was

21  entitled to a sentence reduction under U.S.S.G. § 3B1.2, the minor role adjustment provision. *See*

22  *Harfst*, 168 F.3d at 403–04; *Soto*, 132 F.3d at 59; *Headley*, 923 F.2d at 1084. These cases,

23  however, are distinguishable because they all involved a defense counsel's failure to argue for the

24  minor role adjustment *at sentencing* when the facts of the offense indicated that petitioner was

25  exactly the sort of person the minor role provision covered. By contrast here, although Petitioner's

26  counsel could not argue for a minor role adjustment or downward departure, Petitioner's counsel

United States District Court
Northern District of California

1    argued for a minor role downward variance at the time of sentencing. The Court in fact granted a

2    downward variance at the time of sentencing. Thus, these cases are inapposite.

3          Accordingly, Petitioner's ineffective assistance of counsel claim as to his allegation that

4    his lawyer was ineffective for failing to obtain a minor role reduction also fails.

5    **B. Petitioner's Miranda Claim**

6          Finally, Petitioner claims that he is entitled to relief under § 2255 because he did not

7    receive Miranda warnings at the time of his arrest. Mot. at 4. For the reasons discussed below, the

8    Court finds that this claim is procedurally barred in light of Petitioner's failure to raise the claim

9    on appeal and that Petitioner waived this claim by pleading guilty.

10          First, Petitioner's Miranda claim is procedurally barred because he filed a direct appeal,

11    but failed to raise the claim that he did not receive Miranda warnings at the time of his arrest in his

12    appeal. *See* Opp'n Exh. 2. A § 2255 motion may not raise issues which should have been raised on

13    direct appeal. *See United States v. Guess*, 203 F.3d 1143, 1145 (9th Cir. 2000); *Massaro v. United*

14    *States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal

15    may not be raised on collateral review."). A petitioner may overcome the procedural-default rule

16    by showing either (1) cause and prejudice to explain the default or (2) actual innocence of the

17    charged crime. *Guess*, 203 F.3d at 1145. To demonstrate cause for a procedural default, a

18    petitioner must show that "some objective factor external to the defense" impeded his adherence to

19    the procedural rule. *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003) (quoting *Murray*

20    *v. Carrier*, 477 U.S. 478, 488 (1986)). A petitioner can establish cause "if the record shows that an

21    appellate counsel's performance fell below the standard of competency of counsel set forth in

22    *Strickland*." *Id.* (citing *Murray*, 477 U.S. at 488). To show prejudice, a petitioner must show "not

23    merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his

24    *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

25    dimensions." *Murray*, 477 U.S. at 493 (quoting *United States v. Frady*, 456 U.S. 152, 153 (1982)).

26    "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other

United States District Court
Northern District of California

than a showing that the prisoner was denied 'fundamental fairness' at trial." *Id.*

The Court finds that the procedural-default rule bars Petitioner's Miranda claim because Petitioner does not establish cause, prejudice, or actual innocence to excuse his failure to raise the claim on appeal.

Moreover, even if Petitioner's Miranda claim were not procedurally defaulted, Petitioner waived this claim by pleading guilty. *See* Plea Transcript at 8–9 (showing that Petitioner stated that he understood he was giving up his rights to plead not guilty, to have a jury trial, to present defenses at that trial, to file an appeal, and to collaterally attack the conviction and sentence).

The Ninth Circuit has said that "it is well-settled that an unconditional guilty plea . . . cures all antecedent constitutional defects." *See United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). And, as the United States Supreme Court has declared: when a "defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). "He may only attack the voluntary and intelligent character of the guilty plea." *Id.*

As already discussed, Petitioner's Plea Agreement and plea colloquy demonstrate that he understood his Plea Agreement and intelligently and voluntarily entered into it. Petitioner therefore waived any right to claim error from not being Mirandized when he pled guilty.

In sum, the Court finds that Petitioner is not entitled to relief based on his Miranda claim.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's motion to set aside, correct, or vacate his sentence pursuant to 28 U.S.C. § 2255 is DENIED. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

Case No. 13-CR-00347-LHK-1
Case No. 16-CV-05232-LHK
ORDER DENYING PETITIONER'S MOTION TO SET ASIDE, CORRECT, OR VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255

Dated: September 26, 2018

_Lucy H. Koh_
LUCY H. KOH
United States District Judge